United States District Court
Northern District of New York
_____

Joy Prue,                                                                                    1:13-CV-1280 (FJS-CFH)

                Plaintiff,

        -against-

Hudson Falls Post No. 574, Inc.,
American Legion, Department of New York, et al.

                Defendants.

_____

## Memorandum of Law in Opposition to Summary Judgment

This memorandum is submitted in opposition to the Plaintiff's motion for partial summary judgment.

## The Facts

Plaintiff is a member of the defendant, Hudson Falls Post No. 574, Inc, American Legion, Department of New York (the "Post"). The Post is an organization of honorably discharged war veterans created under 36 USC 21701 *et seq.* and the New York Not for Profit Corporation Law.

Plaintiff was appointed "House Manager" by the Post Executive Board. The Executive Board is both the Board of Directors and the Executive Committee of the Post. At the next annual meeting of the Post the members elected her as Post Adjutant. The Adjutant is the chief administrative officer of the Post, its corporate secretary, and the custodian of all its records.

The Post agreed to pay her $400 per month and did so until her resignation.

Her duties as House Chairman were unlocking and locking the Post, accepting deliveries to the Post, supervising the few other post employees (a janitor and the bartenders) and the volunteer post runner, and establishing the tours of duty of the bartenders. She had the power to appoint herself as a bartender. She shared the duty with the Post Treasurer of taking deposits to the bank. Contrary to her motion papers, the Post Bingo games were not part of her responsibility.

She was not paid as Adjutant but her duties as such included keeping the minutes of meetings' handling correspondence, and attesting the Commander's signature.

The Commander, the Treasurer, and the Adjutant are the three executive officers of the Post.

The Plaintiff claims to have worked more than forty hours each in eighteen weeks and has attached a purported schedule of the number of hours she claims to have worked in each of those weeks.

The Plaintiff complained to the New York State Department of Labor and it found that she had not worked over forty hours a week at any time.  (Exhibit 6 to the Motion papers.)

The Post Commander denies that the alleged schedule of hours worked is a post record. It clearly did not exist at the time of the New York State proceedings. The Plaintiff has not explained how she came to possess it. Discovery has not proceeded far enough along to get her testimony as to whether she created it after the fact or how she came in possession of it or to have a document expert examine it.

Although the Plaintiff has not expressly so stated, it is pretty clear that she is counting every minute she was in the Post building as work time. As a member of the Post she was entitled to be in the building whenever it was open. She was not, however, required as House Manager to be in the building whenever it was open as she implies. Indeed she correctly argues that she was required

to be in the building whenever a non-member was the sponsor of an event in it. These events were scheduled to last four hours but may have lasted five hours. They were less frequent than daily. They clearly fall far short of forty hours per week.

As shown by the annexed affirmations of ten Post members, she frequently hung around the Post conducting her travel agency business and tutoring business. This was for her convenience, not to work for the Post. There was no requirement that she stay at the Post after she unlocked it unless a delivery was expected immediately after opening. Indeed on many days, when there were no deliveries or outside events, she could have simply unlocked the post, made sure the bar was staffed and gone home and returned to lock the Post building at the end of the day.

## Plaintiff Did Not Work Over 40 Hours in Any Week

The New York Department of Labor determined that the Plaintiff did not work over forty hours in any week. This was in an audit caused by Plaintiff. The New York Department of Labor bent over backward to give her a chance to prove her case. Plaintiff is precluded from re-litigating an issue clearly raised in a prior proceeding and decided against her. *Parklane Hoisery Co. v. Shore,* 439 US 322 (1979); *Secretary of Labor v. Superior Care, Inc.*, 1966 WL 32741 (EDNY 1966) copy attached to prior motion papers; Am Jur 2d, Volume 48B, Labor and Labor Relations, page 695, section 3306. Cf. *Matter of Hunter*, 4 NY3d 260,264 (2005).

The Plaintiff's theory of the case is that she was "required" to remain at Post Headquarters every day from the time she unlocked it to the time she locked it up at night. This is simply not true. It is, indeed, inconsistent with her other theory that she was required to be at the Post headquarters during non-member events, which were about five hours and only a few days a week. It is settled that if an employer has two tasks for an employee on the same day and then employee is free to leave the place of employment between them, the employee cannot convert the time

between them into time on the job simply by staying voluntarily at the workplace. *Gordon v. Paducah Ice Mfg. Co.,* 41 F. Supp 980, 985 (W. D. Ky, 1941).

It also appears that the Plaintiff is including her time at Bingo games in her computations. Bingo was, however, not under her jurisdiction.

The attached declaration, under penalty of perjury and on personal knowledge, by the Post Commander says, "At no time did the Post make demands on her time anywhere near 40 hours per week." This, alone, is sufficient to prevent a summary finding that she worked more than forty hours in any week.

The Plaintiff basses her case on a document allegedly computing her hours. The Commander, however, declared on personal knowledge and under penalty of perjury, that this document is not a post record. The document is suspicious, in any case, because the Plaintiff has no explanation of how she got it unless she fabricated it. This will have to be explored in pre-trial discovery.

## Plaintiff Was Employed in a Bona Fide Executive Capacity

29 USC 213 exempts persons employed in a *bona fide* executive capacity from the provisions of 29 USC 206 (minimum wages) and 29 USC 207 (overtime pay). It does not provide for a minimum rate of pay to be an executive, nor does it empower the executive branch of the government to make such a provision, either expressly or by implication.

The Secretary of Labor has arbitrarily and capriciously set $455 per week as the minimum wage for executives.

Arguing that the corporate secretary and senior executive in charge of daily operations is not an executive (within a statute) by reason of a regulation is like arguing that if Congress taxed pigs at 25 cents per leg the IRS could make a tail a leg by regulation and collect $1.25 per pig.

Since the executive exemption covers both overtime pay (206) and minimum wages (207) Plaintiff's position implies that Congress intended to set a minimum wage, exempt executives from it, and empower the Secretary to completely nullify that exemption by setting a higher minimum wage for the exemption. This is a totally irrational construction of legislative intent. Furthermore the Plaintiff's position would outlaw the practice of executives working for one dollar a year.

Regulations are intended to fill in the gaps of statutes, not modify them, and must be rational and not lead to absurd results when interpreting statutes. *Conteras v. United States*, 215 F. 3d 1267 (Fed Cir. 2000). The Constitution does not give the executive branch legislative power. *Peters v. Hobby*, 349 US 336, 350 (1955, Black concurring.

The power of the executive branch must stem from either an act of Congress or the Constitution. *Medellin v. Texas*, 552 US 401, 524 (2008); *Youngstwn Co. v. Sawyer*, 334 US 579, 585 (1951). There is nothing whatsoever in the statute from which there is a possible implication that a manifest high executive could be defined by the Secretary as a non-executive.

This is in no way analogous to a company attempting to define non-executives as executives to escape wage and hours laws.

## The Post Does Not Do $500,000 in Sales and Business

Plaintiff has confused "gross receipts" which is a concept of tax law with "Gross receipts from sales and business" which is the test under the statute at issue here. UInder the proper test the Post does not meet the $500,000 fresh-hold.

## The Plaintiff Did Not Engage in Interstate Commerce

The Plaintiff bases her claim that she was engaged in interstate commerce primarily on the fact that she put bottles and cans on shelves that had travelled in interstate commerce. This is not enough.

## There Was No basis for Naming the Individual as a Defendant

On the same night that the Plaintiff was elected Adjutant the individual defendant was elected Commander. There is nothing in the motion papers that justifies a conclusion that he was involved in the subject matter of this case. Indeed all decisions by the Post were taken either by its Executive Board or by a meeting of its members.

Wherefore Defendants request denial of the motion for summary judgment.

Glen Cove, New York
April 8, 2014

                        /s/ Charles G. Mills
                        Charles G. Mills 509906
                        Attorney for Plaintiffs
                        21 Brewster Street - - Apt 408
                        Glen Cove, New York 11542
                        516-759-4300
                        Fax 516-759-4329
                        charles.mills.pc.62@aya.yale.edu