UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF  NEW YORK
_____

JOY PRUE,

                              **Plaintiff,**

                **v.**                                        **1:13-CV-1280**
                                                           **(FJS/CFH)**

HUDSON FALLS POST NO. 574, INC., THE AMERICAN
LEGION, DEPARTMENT OF NEW YORK, and CHRIS
FONTAINE,

                              **Defendants.**
_____

| APPEARANCES | OF COUNSEL |
|---|---|
| **FELDMAN MORGADO, P.A.** | **DALE J. MORGADO, ESQ.** |
| 228 Park Avenue S. #84164 | **MICHAEL R. MINKOFF, ESQ.** |
| New York, New York 10003 | |
| Attorneys for Plaintiff | |
| | |
| **OFFICE OF CHARLES G. MILLS** | **CHARLES G. MILLS, ESQ.** |
| 56 School Street | |
| Glen Cove, New York 11542 | |
| Attorneys for Defendants | |

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I.      INTRODUCTION

Currently before the Court are the following motions: (1) Plaintiff's motion to strike

Defendants' Amended Answer and affirmative defenses pursuant to Rule 12(f) of the Federal

Rules of Civil Procedure or, in the alternative, to order a more definite statement pursuant to

Rule 12(e), *see* Dkt. No. 15; (2) Defendants' motion to dismiss Plaintiff's complaint, *see* Dkt. No. 16; (3) Plaintiff's motion for Summary Judgment on Defendants' liability under the Fair Labor Standards Act ("FLSA"), *see* Dkt. No. 27; and (4) Defendants' motion for partial summary judgment dismissing the complaint as to Defendant Chris Fontaine, *see* Dkt. No. 62

## II. BACKGROUND

Plaintiff Joy Prue ("Plaintiff") is a resident of New York State.  Defendant Hudson Falls Post No. 574, Inc., The American Legion, Department of New York ("Post 574") is a domestic not-for profit corporation in Washington County, New York.  Defendant Chris Fontaine is the Commander of Post 574.

Plaintiff, a former employee of Defendant Post 574, filed her Complaint in the Northern District of New York on October 16, 2013.  In her Complaint, Plaintiff alleged that Defendants employed her as the "house custodian" or "house manager" from about April 27, 2011, until November 2012.  Plaintiff alleged that she regularly worked as house manager in excess of 40 hours per week, but Defendants only paid her a fixed salary of $400 per week.

Based upon these allegations, Plaintiff sued Defendants for violation of the FLSA to recover unpaid wages in violation of overtime requirements, liquidated damages, interest, and reasonable attorney's fees and costs of the action.  Plaintiff seeks the following relief from this Court:

> 1. An order of judgment in Plaintiff's favor and against Defendants for violating the FLSA and holding them jointly and severally liable;
>
> 2. A finding that Defendants violated the overtime compensation provisions of the FLSA and that such violation was and is willful, in bad faith, and with reckless disregard for the law;
>
> 3. An award of overtime compensation for all the previous hours worked over forty hours in the amount of at least one and one-half

time compensation and liquidated damages of an equal amount;

4. An order awarding attorney's fees and costs pursuant to § 216 of
the FLSA; and

5. Any other legal or equitable relief that the Court deems just and
appropriate.

Defendants denied that Plaintiff worked more than forty hours per week as house manager.

Defendants alleged that, prior to and during her time as house manager, Plaintiff also served as

Post 574's Adjutant.  Defendants also asserted that, as the Adjutant, Plaintiff was a member of

Post 574's executive committee, its chief administrative officer, its fifth-ranking officer, and its

corporate secretary.  Based on these allegations, Defendants asserted the defense that Plaintiff

was exempt from the FLSA's minimum wage and overtime requirements because she was an

executive employee of Post 574.  Finally, Defendants argued that Plaintiff was collaterally

estopped from litigating the issue of whether she worked more than forty hours per week as

house manager.


## II.  DISCUSSION

### A.      Defendant Fontaine's liability

In *Irizarry v. Catsimatidis*, the Second Circuit provided several considerations for

determining whether the chairman and chief executive officer ("CEO") of a chain of

supermarkets was an "employer" for the purpose of determining whether that officer "would be

held jointly and severally liable for damages along with the corporate defendants."  722 F.3d 99,

102 (2d Cir. 2013) (citation omitted).  The Court of Appeals first recognized the Supreme

Court's requirement that courts look to the "economic reality" of an employment situation to

determine whether an employer-employee relationship exists.  *Id.* at 104 (quoting *Goldberg v.*

*Whitaker House Coop., Inc.*, 366 U.S. 28, 33, 81 S. Ct. 933, 6 L. Ed. 2d 100 (1961)).  This economic reality cannot be determined based upon any isolated factors but depends "'rather upon the circumstances of the whole activity.'"  *Id.* (quoting *Rutherford*, 331 U.S. at 730, 67 S. Ct. 1473).

In *Carter v. Dutchess Cmty. Coll.*, the Second Circuit identified four "relevant" factors for evaluating the circumstances as a whole in order to determine that economic reality: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payments, and (4) maintained employment records."  *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984) (quotation omitted).  And yet, the Court of Appeals noted in *Irizarry* that none of the four *Carter* factors comprise a "rigid rule" for a determination that a defendant is liable as an employer.  *Irizarry.* 722 F.3d at 105 (quoting *Barfield [v. New York City Health & Hospitals Corp.*, 537 F.3d 132, 143 (2d Cir. 2008)]).

In addition to the "nonexclusive and overlapping" *Carter* factors, *id.* (quoting *Barfield*, 537 F.3d at 143), the Second Circuit in *Irizarry* noted the existence of "other factors" bearing upon the "'overarching concern [of] whether the alleged employer possessed the power to control the workers in question.'"  *Id.* (quoting [*Herman v. RSR Sec. Serv.s Ltd*, 172 F.3d 132,] 139 [(2d Cir. 1999)]).  These factors include whether the defendant "exercised financial control" over a company; had "authority over" the manager who "directly supervised" the plaintiff employee; received "periodic reports [including] work orders, memos, investigation reports, . . . invoices, [and] weekly timesheets,"; referred individuals to the company as potential employees; occasionally assigned employees to specific tasks; occasionally set the rates clients were charged for services; ever gave instructions to managers about operations; forwarded complaints about

4

employees to managers; signed payroll checks; established a separate payment system for some clients; and represented himself to third-parties as "the boss." *Id.* at 106 (citing [*Herman*, 172 F.3d at 136-37]).

The *Irizarry* decision also recognized the existence of "two legal questions relevant here[:]"

> The first concerns the scope of an individual's authority or "operational control" over a company—at what level of a corporate hierarchy, and in what relationship with plaintiff employees, must an individual possess power . . . ?  The second inquiry . . . concerns hypothetical versus actual power: to what extent and with what frequency must an individual actually use the power he or she possesses over employees to be considered an employer?

*Id.* (citing [*Herman*, 172 F.3d 132]).  The Second Circuit did not provide any specific guidance on how courts should answer these questions, or how much weight to give them.  Instead, it surveyed various decisions of other circuit courts of appeal and noted how they weighed various factors relating to employment relationships.  *See id.* at 107-09.

Reviewing these decisions, the Second Circuit found the weight of authority to support its "focus[]" upon a defendant individual's operational control of the company's employment of the plaintiff employees, "rather than simply operational control of the company."  *Id.* at 109.  The Court of Appeals then clarified, "to be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to plaintiff's employment." *Id.*  This operational control requirement is satisfied if the individual defendant's "role within the company, and the decisions it entails, directly affect the nature or conditions of the employees' employment . . . the relationship . . . must be closer in degree than simple but—for causation." *Id.* at 110.  Operational control need not be exercised constantly to establish liability, and may still render an individual defendant liable even if it is "restricted, or exercised only occasionally."

*Id.* (quoting [*Herman*,] 172 F.3d at 139).

Finally, the Court of Appeals noted that while the Eleventh Circuit has squarely held that unexercised authority is insufficient to establish liability as an employer, the Second Circuit saw no need to do so based on the factual situation in *Irizarry. See id.* at 111 (citing *Alvarez Perez v. Sanford—Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008)).

Here, Defendant Fontaine clearly contributed to Post 574's exercise of control over Plaintiff by virtue of his participation in the Post's Executive Committee.  The Executive Committee alone had authority to approve all expenditures and manage the affairs of Post 574. It had hiring, firing, and disciplinary authority.  Defendant Fontaine presided over this committee when he was Post Commander and was a voting member of the Executive Committee when he was First Vice Commander.  The Constitution and By-Laws indicate that, as Post Commander, Defendant Fontaine was also the Post's CEO and had approval authority for all disbursement of funds.  He also apparently had independent disciplinary authority, with the power to temporarily suspend persons from the premises subject to Post regulations.

If Post 574 were a for-profit corporation, and Defendant Fontaine one of its owners, investors, or salaried corporate officers, it would appear that Defendant Fontaine squarely meets the requirements for individual liability as an employer.  He clearly exercised operational control over Plaintiff's employment as House Manager as he presided on and voted on the Executive Committee.  He could, therefore, be held jointly and severally liable along with the Defendant Post for Plaintiff's damages.  However, there does not appear to be any precedent for holding an individual liable for acts made in his official capacity as the unsalaried officer of a nonprofit organization.

The closest case appears to involve the Tony and Susan Alamo Foundation, where the Western District of Arkansas found this nonprofit religious organization to be in violation of the FLSA's minimum wage and overtime provisions. *See Donovan v. Tony & Susan Alamo Found.*, 567 F. Supp. 556, 575 (W.D. Ark. Dec. 13, 1982). In that case, the district court also found that Defendant Tony Alamo, who acted as the organization's President, and Defendant Susan Alamo, who had acted as the Secretary and Treasurer until her death, were liable as employers as well due to their role in directing the activities of the Foundation. *See id.* The district court did not specifically discuss joint and several liability in its order for remedies, probably because the plaintiff's claim was for injunctive relief and not damages. *See id.* at 558-59.

However, in its amended order on remedies, the district court did make one important distinction between the liability of Mr. Alamo and that of the Foundation. First, the district court enjoined all defendants equally; it ordered Mr. Alamo, the Foundation, and all of the Foundations officers, agents, servants, employees, and participants to refrain from further violating the FLSA. *See id.* at 576. Second, the district court similarly enjoined both the individual defendant and the corporate defendant from withholding payment of overtime wages to specified employees, apparently referring to payments owed for future labor. *See id.* But in the third part of the order, the district court enjoined only the corporate foundation from withholding minimum wage and overtime compensation from all persons "who make claims for back wages" pursuant to a procedure that the court outlined. *See id.* In the next sentence of the same third part, the district court brought Mr. Alamo's name back into the discussion, ordering him and the Foundation to furnish the names and addresses of former employees so that the Secretary of Labor could notify them of their rights to back wages. *See id.* at 576-77. Finally, Mr. Alamo received instructions in the fourth part of the remedy order, when the district court

enjoined him and the corporate defendant from failing to comply with specified provisions of the FLSA, as well as orders and regulations of the Secretary of Labor. *See id.* at 577.

Although the district court did not explain its omission of Mr. Alamo from the back wages payment order or even acknowledge that it had done so, the effect of the omission is clear: the district court declined to order Mr. Alamo to contribute to back wages and overtime funds. As the district court threaded the needle, Mr. Alamo could no longer use his position of authority at the Foundation to deprive current or former employees of their just compensation, but he was not required to use his personal funds to compensate employees for decisions he had previously made in his official capacity as President.

The Court of Appeals for the Eighth Circuit affirmed the district court's judgment without comment upon the distinction drawn in its order of remedies. *See Donovan v. Tony & Susan Alamo Found.*, 722 F.2d 397, 405 (8th Cir. 1983). The Supreme Court did the same. *Tony and Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 306 (1985).

Here, the Court would fashion a similar resolution if Plaintiff had sought injunctive relief, as the Secretary of Labor sought in *Tony & Susan Alamo Foundation*. However, Plaintiff seeks not injunctive relief but damages from both Defendants. Although this Court finds reason to hold Defendant Post 574 liable for damages (*see* Part B, *infra*), it finds no precedent for ordering that the corporate officer of a non-profit, who drew no salary from his office and had no financial stake in the business of the non-profit, be liable for damages relating to his official duties. Accordingly, this Court grants Defendants' motion for partial summary judgment and dismisses Plaintiff's claim against Defendant Fontaine.

**B.      Defendant Post 754's liability under the FLSA**

*1.      Enterprise coverage*

The FLSA applies to all employees of Defendant Post 574.  An enterprise is covered under the FLSA where that enterprise employs people engaged in commerce and it does more than $500,000 in gross business.  *See* 29 U.S.C. § 203(s)(1); *Velez v. Vassallo*, 203 F. Supp. 2d 312, 328 (S.D.N.Y. 2002).  Here, Post 574 employed people who received items such as alcoholic beverages in interstate commerce.  Post 574 also did more than $500,000 in gross business in 2011 and 2012.  Therefore, the Court finds that the FLSA's "enterprise coverage" provision applies to Post 574 and, by extension, to Plaintiff.

*2.      Individual coverage*

Individual coverage arises under the FLSA for employees who engage in interstate commerce, even if those employees only receive goods in interstate commerce.  *See Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568-69 (1943).  Here, it was Plaintiff's job to receive goods such as alcoholic beverages in interstate commerce.  Therefore, the Court finds that the FLSA applies to Plaintiff as an individual.

*3.      Executive exemption*

Defendants are incorrect that Plaintiff was an executive under the FLSA and therefore exempt from its wage and hour rules under 29 U.S.C. § 213.  A bona fide executive is an executive who, among other things, receives at least $455 per week in salary.  29 C.F.R. § 541.100; *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 209 (1966); *Martin v. Malcolm*

*Pirnie, Inc.*, 949 F.2d 611, 615 (2d Cir. 1991).  Here, Defendant Post 574 paid Plaintiff $400 per week; and, thus, Plaintiff was not a bona fide executive under the FLSA.

> ### 4.    Hours worked

As a threshold matter, Plaintiff is not collaterally estopped from litigating this issue.  The four requirements for issue preclusion under collateral estoppel are "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) The party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid judgment on the merits.'"
*See Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013) (quotation and other citations omitted).  Defendants have the burden of proving that the hours issue was "raised and necessarily decided in a previous proceeding . . . ."  *Lafleur v. Whitman*, 300 F.3d 256, 272 (2d Cir. 2002) (quotation omitted).

Here, the New York State Department of Labor ("NYS DOL") conducted an investigation of Plaintiff's employment at Defendant Post 574.  However, there is no evidence that the NYS DOL conducted a "proceeding" on this issue sufficient to satisfy the first requirement for collateral estoppel.  Defendants' argument that Plaintiff is collaterally estopped from litigating the issue of the hours she worked relies upon a mischaracterization of the record; in particular, an August 30, 2013 letter from an NYS DOL investigator to Plaintiff ("August 2013 Letter").  The August 2013 Letter, which Defendants cite, is not an official finding of the NYS DOL or an administrative law judge.  Nor does it state the conclusive results of an investigation.  The August 2013 Letter stated instead that "[o]ur division is currently investigating your claim," that it had "interviewed several people at the Legion, but found no

indication that you worked as many hours for American Legion as you claimed," that it "tried to determine the amount of time it would have taken for you to perform your duties . . . but found that it would generally have taken you far fewer than 40 hours a week."  The letter stated that the division could not require payment of back wages for overtime hours but gave Plaintiff the option of "provid[ing] a credible explanation with documentary evidence" to support her claims. Finally, the August 2013 Letter advised Plaintiff that the division would close her case if it did not receive additional evidence.  None of the foregoing meets the requirements for collateral estoppel.

Turning to the merits of Plaintiff's claim, the Court finds that Plaintiff worked more than forty hours per week at least occasionally.  Where an employer's records of an employee's hours worked are "inaccurate or inadequate," an employee may meet her burden by producing "sufficient evidence to show the amount and extent of work as a matter of just and reasonable inference."  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).  Once a plaintiff does so, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employees evidence."  *Id.* at 687-88.  If an employer fails to negate a plaintiff's evidence of uncompensated labor, the Court may award damages "even though the result be only approximate."  *Id.* at 688 (citation omitted).

Here, Plaintiff has alleged that she worked more than forty hours per week, citing her own recollection as well as business records that support her version of events.  She personally recalled working more than forty hours "almost every week."  A ledger of Plaintiff's hours worked ("Hours Ledger"), which Defendants produced in discovery and which Defendant Post 574's Treasurer signed, records nineteen weeks between April 2012 and November 2012 in

which Plaintiff worked more than forty hours.  Plaintiff also produced her own personal calendar

("Plaintiff's Calendar"), in which she noted her hours worked each day between June 2011 and

November 2012.  The work hours recorded in Plaintiff's Calendar correspond exactly to the

hours recorded in the Hours Ledger for every day from April 2012 to November 2012.

Plaintiff's Calendar also records 35 weeks in which Plaintiff worked more than 40 hours between

June 2011 and April 2012.

Defendants have been unable to produce any documentation of Plaintiff's work hours

from April 2011 until April 2012.  The only records they have produced corroborate Plaintiff's

account.  Defendants produced a copy of Plaintiff's Hours Ledger from their own files, which

was identical to the one that Plaintiff produced.  Defendants also produced Plaintiff's Time

Cards from their own files.  The work hours recorded in the Plaintiff's Time Cards correspond

exactly to the hours recorded in the Hours Ledger and Plaintiff's Calendar for every day from

June 2012 to November 2012.

The only evidence Defendants have produced to negative the reasonableness of

Plaintiff's work-hours evidence are declarations and affidavits, which Defendants created after

Plaintiff filed her Motion for Summary Judgment.  In these statements, Defendant Post 574's

Judge Advocate, and Defendants' counsel, asserts that Plaintiff "never worked as much as forty

hours a week."  The Judge Advocate goes on to assert that Plaintiff is seeking compensation for

time during which "she was seen by many post members hanging around the post to conduct her

own business enterprises . . . ."  The Judge Advocate's assertions are conclusory and do not

specifically challenge a single hour of Plaintiff's claimed work on any of the 119 days recorded

in the Time Cards, the 203 days recorded in the Hours Ledger, or the 518 days recorded in

Plaintiff's Calendar.

Defendant Fontaine, the Post Commander, asserts that Plaintiff's work requirements during non-member functions "happened far less than every day" and "each time [they] lasted about four hours."[1]  Defendant Fontaine also asserts that Plaintiff "improperly wants to count" her time spent at meetings of the Post and Executive Board.  Defendant Fontaine finally asserted that Plaintiff "alleges that she worked on the Post's bingo games as part of her computation of hours worked," and that "This was not part of her paid duties as house chairman . . . ."  Like the Judge Advocate, Defendant Fontaine does not specifically challenge a single hour of Plaintiff's claimed work.  Even if Plaintiff were claiming such time, Defendant Fontaine does not explain why bingo games would not require her presence as the employee tasked with "[m]anagement of the lounge and rental areas," who must "handle all situations that may arise."

Margaret Folk, the Vice Commander of The American Legion, Department of New York, asserted that she was "second in command for about 200 American Legion Posts in New York State," including Defendant Post 574.  She asserts that, although she was not a member of Post 574, she is "frequently in the Post" and she "often saw [Plaintiff] using the Post for the transaction of the business of her business enterprises." (sic).  This declaration appears to have no probative value as the allegation, even if true, would not negate the possibility that Plaintiff worked more than forty hours per week as house manager in addition to the occasions of unspecified duration and frequency when Ms. Folk claims to have seen her conduct personal business.

Robert Beard, who like Mr. Mills also claims to be "the Judge Advocate (chief legal officer)" of Defendant Post 574, alleges that he "frequently saw [Plaintiff] conducting non-

---

[1] In this Declaration, Defendant Fontaine also makes the apparently false, or at least incorrect, statement that Plaintiff's "alleged records of her time submitted in support of her motion for summary judgment are recent creations.  There were no such records while she was employed."  *See* Fontaine Declaration, April 2014 at 3.

Legion business (tutoring students and running a travel agency) from the Post while it was open." This declaration lacks probative value for the same reason that Ms. Folk's does.

Defendants also include a single declaration signed by eight members of Defendant Post 574, who allege that they "frequently saw [Plaintiff] conducting non-Legion business (tutoring students or running a travel agency) from the Post while it was open." This declaration lacks probative value for the same reason that Ms. Folk's and Mr. Beard's do.

Among the declarations disputing Plaintiff's hours worked, Defendants did *not* include a statement from Mary Gebo, Defendant Post 574's Treasurer and Chief Financial Officer, whose name appears on Plaintiff's Hours Ledger and who signed Plaintiff's paychecks.

In satisfaction of *Anderson*, Plaintiff has produced sufficient evidence to support the reasonable inference that she worked more than forty hours on at least several occasions. Defendant Post 574 has failed to meet its burden to negate the reasonableness of this inference. Defendant Post 574 admitted that Plaintiff was never paid more than her weekly salary of $400. Defendant's failure to compensate Plaintiff for her overtime work is a violation of the FLSA. *See* 29 U.S.C. § 207(a)(1). Therefore, the Court finds that Defendant Post 574 is liable to Plaintiff for the hours that she worked in those weeks in which she worked more than forty hours.

### 5.    *Willfulness*

There is insufficient evidence to find as a matter of law that Defendant's violations were willful. An FLSA violation is only willful where the employer knowingly violates or shows reckless disregard for the provisions of the Act. *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988). In *Brock*, for instance, the Second Circuit held that an employer was

on actual notice of its FLSA obligations due to previous findings of FLSA violations against it. *See id.* Here, Plaintiff has not alleged that Defendant Post 574 was or should have been aware that the FLSA applied to Post 574 as an enterprise or to Plaintiff as an individual. Indeed, Defendant Post 574 apparently had a good-faith basis to believe, albeit erroneously, that Plaintiff, as Post 574's Adjutant and a member of its Executive Committee, was exempt under the FLSA's executive exemption. Accordingly, the Court finds that Defendants' violations were not willful.

## IV. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' Motion for Partial Summary Judgment, *see* Dkt. No. 62, is **GRANTED** and Plaintiff's claim against Defendant Chris Fontaine is **DISMISSED;** and the Court further

**ORDERS** that Plaintiff's Motion for Summary Judgment with respect to Defendant Post 574's liability for non-willful violation of the FLSA, *see* Dkt. No. 27, is **GRANTED**; and the Court further

**ORDERS** that Defendants' Motion to Dismiss Plaintiff's Complaint, *see* Dkt. No. 16, is **DENIED**, and the Court further

**ORDERS** that Plaintiff's Motion to Strike Defendants' Amended Answer and affirmative defenses to Plaintiff's Complaint or, in the alternative, for a More Definite Statement, see Dkt. No. 15, is **DENIED** as moot; and the Court further

**ORDERS** that counsel shall participate in a telephone conference with the Court on **May 12, 2015** at **10:00 a.m.** to set a hearing date to determine the following: (1) the number of hours that Plaintiff worked as house manager for each week between April 17, 2011, and April 1, 2012,[2] and (2) the regular hourly rate at which Defendant Post 574 should compensate Plaintiff for the hours that she worked as house manager in excess of forty hours per week for the period between April 27, 2011, until November 2012.  The Court will provide dial-in instructions to counsel for the telephone conference prior to May 12, 2015.

**IT IS SO ORDERED**

Dated: March 31, 2015
         Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge

---

[2] The Court notes that, because Defendants have produced the House Ledger for the period between April 2012 and November 2012, which records the same hours as Plaintiff recorded in her calendar for this period, the Court does not need any additional evidence to determine how many hours Plaintiff worked each week during this period of time.  Accordingly to both documents, Plaintiff worked more than forty hours a week in nineteen weeks during this time frame.  Therefore, once the Court determines the hourly rate of compensation, the Court will be able to determine the amount that Defendant Post 574 owes to Plaintiff for the overtime hours that she worked during this period of time.